# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|                              |   |                    |
|------------------------------|---|--------------------|
| PATRICK MOONEY, M.D.,        | : |                    |
|                              | : | C.A. No. 10054-VCP |
| Plaintiff,                   | : |                    |
|                              | : |                    |
| v.                           | : |                    |
|                              | : |                    |
| ECHO THERAPEUTICS, INC.,     | : |                    |
|                              | : |                    |
| Defendant.                   | : |                    |
|                              | : |                    |

## MEMORANDUM OPINION

Date Submitted: January 15, 2015
Date Decided: May 28, 2015

Barry M. Klayman, Esq., COZEN O'CONNOR, Wilmington, Delaware; Edward S. Mazurek, Esq., THE MAZUREK LAW FIRM, LLC, Philadelphia, Pennsylvania; *Attorneys for Plaintiff, Patrick Mooney, M.D.*

Gregory B. Williams, Esq., Carl D. Neff, Esq., FOX ROTHSCHILD LLP, Wilmington, Delaware; James A. Matthews, III, Esq., FOX ROTHSCHILD LLP, Philadelphia, Pennsylvania; *Attorneys for Defendant, Echo Therapeutics, Inc.*

**PARSONS, Vice Chancellor.**

This request for advancement asks the Court to determine the defendant corporation's advancement obligations with respect to six categories of attorneys' fees. The various proceedings for which the plaintiff seeks advancement arise out of the plaintiff's termination as an officer and employee of the defendant corporation and the contentious litigation that followed. The parties essentially submitted this matter on the papers. For the reasons that follow, the plaintiff is entitled to advancement for some, but not all, of the categories for which he requests it.

## I. FACTUAL OVERVIEW[1]

Defendant, Echo Therapeutics, Inc. ("Echo," or the "Company"), is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Plaintiff, Dr. Patrick Mooney ("Dr. Mooney"), served as Echo's CEO and Chairman of the Board of Directors from sometime in 2007 through August 2013. Non-party Elizabeth Mooney ("Mrs. Mooney") is Dr. Mooney's wife.

On January 17, 2013, Echo responded to an investigation by the Financial Industry Regulatory Authority ("FINRA") into suspicious trading in Echo's stock (generally, the "FINRA Investigation"). This is the first category for which Dr. Mooney requests advancement. In August 2013, the Company commenced an internal investigation into alleged misconduct by Dr. Mooney (generally, the "Internal Investigation"). The parties vigorously dispute the justification for the Internal Investigation. While Echo maintains

---

[1] The facts recited herein are drawn from the parties' Joint Stipulation of Facts ("J.S.") and any exhibits thereto, which will be cited as "JX [#]."

1

that the investigation was bona fide, Dr. Mooney dismisses it as a sham.[2]  The Internal

Investigation is the second advancement category.

On September 27, 2013, Echo terminated Dr. Mooney, purportedly for cause.  The

Mooneys together filed suit against Echo and others in a case captioned *Mooney, et al. v.*

*Grieco, et al.*,[3] in the Philadelphia County Court of Common Pleas (the "Philadelphia

Court") on February 4, 2014.  In that case, Dr. Mooney brings claims for breach of his

employment agreement, violation of various wage and payment statutes, defamation, and

loss of consortium (generally, "*Mooney I*").  The defendants in *Mooney I*, which include

Echo, filed preliminary objections—Pennsylvania's equivalent of a motion to dismiss—

on March 24, 2014 as to several of Dr. Mooney's claims (the "Preliminary Objections").[4]

Two days later, Echo filed its Answer, New Matter and Counterclaims, which included

four counterclaims (the "Original Counterclaims") and ten affirmative defenses.[5]  The

Original Counterclaims against Dr. Mooney included extensive allegations of

misconduct, the content of which fairly can be described as salacious.  Dr. Mooney first

requested advancement as to the Original Counterclaims on March 31, 2014.[6]  The

---

[2]     J.S. ¶ 6.

[3]     Case ID 140200251.

[4]     JX 4.

[5]     JX 6.

[6]     Although not directly relevant here, Dr. Mooney's requests for advancement
        engendered extensive communications between Dr. Mooney and Echo.  Some of
        those communications involved Dr. Mooney's original refusal to submit an
        undertaking to repay, which is required under 8 *Del. C.* § 145(e).  He eventually

Philadelphia Court denied the defendants' Preliminary Objections on May 19, 2014. The defendants in *Mooney I* also sought to have the case reassigned to a different case management track, but that request was denied as well.

On June 18, 2014, Echo and the other defendants in *Mooney I* filed an Amended Answer with New Matter and Counterclaim (the "Amended Answer").[7] The Amended Answer includes thirteen affirmative defenses and one condensed and revised counterclaim (the "Amended Counterclaim"). Only two of the affirmative defenses are relevant here (the "Amended Affirmative Defenses"). By this amended pleading, which removed the specific factual allegations of misconduct by Dr. Mooney, Echo admittedly sought to moot Dr. Mooney's advancement claims.[8] The *Mooney I* Original Counterclaims make up the third advancement category, and the Amended Counterclaim and Amended Affirmative Defenses collectively comprise the fourth advancement category.

On July 17, 2014, the Mooneys commenced a second lawsuit in the Philadelphia Court captioned *Mooney, et al. v. Burke, et al.* ("*Mooney II*").[9] In *Mooney II*, the plaintiffs allege wrongful use of civil proceedings by Echo and others in *Mooney I*.

did submit such an undertaking. Another point of contention between the parties concerned Dr. Mooney's demand that Echo provide a large lump sum payment to finance any advancement going forward. Dr. Mooney argued that such a payment was necessary based on Echo's precarious financial condition at the time. He later dropped that request, purportedly because Echo had received a capital infusion.

[7]     JX 40 [hereinafter "Amended Answer"].

[8]     JX 41.

[9]     Case ID 140701974.

According to Dr. Mooney, he felt compelled to initiate this second lawsuit to "vindicate his reputation" against the now-abandoned allegations that were made in the Original Counterclaims in *Mooney I*.[10] *Mooney II* is the fifth advancement category. Finally, Dr. Mooney seeks to recover fees on fees that are at least commensurate with his success in this action, which is the sixth disputed category.

## II.   PROCEDURAL HISTORY

Dr. Mooney filed his Verified Complaint in this action (the "Complaint") on August 21, 2014. Echo moved to dismiss and the parties fully briefed that motion by November 3. In a somewhat unusual tactic, Dr. Mooney then moved for a temporary restraining order ("TRO") and preliminary injunction requiring Echo to pay him the advancement he claimed. Echo opposed that motion. On December 24, 2014, the parties stipulated to dismiss the then-pending motions and instead proceeded to "trial." Echo answered the Complaint on December 31, and I entered a new scheduling order on January 5, 2015. After the parties filed their pretrial briefs and a joint stipulation of facts on January 9, I convened a one-day "trial" on January 15. The parties completed their submission of evidence—which consisted solely of additional legal invoices—within minutes, and proceeded immediately to present argument on their respective legal positions. Accordingly, I refer to that proceeding as the "Argument." The net result of this procedural maneuvering is that the parties have briefed the propriety of advancement

---

[10]     Pl.'s Pre-Trial Br. 18.

4

for the six disputed categories three separate times: on a motion to dismiss, in connection with a TRO, and in their pretrial briefing.

## III. STANDARD OF REVIEW

After a trial, the party seeking relief generally has the burden of showing entitlement to that relief by a preponderance of the evidence. Here, the "trial" effectively consisted of oral argument based upon a stipulated record. In that sense, this case procedurally is more analogous to a matter submitted on cross motions for summary judgment.

Pursuant to Court of Chancery Rule 56(h):

> Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.

That essentially is the situation here.[11]

"Summary judgment is granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[11] As the Delaware Supreme Court has observed, however: "the existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues. Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party." *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

as a matter of law."[12]  "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of a corporate instrument."[13]

## IV.    ANALYSIS

I address in turn the six disputed categories of requested advancement: (1) the FINRA Investigation; (2) the Internal Investigation; (3) the *Mooney I* Original Counterclaims; (4) the *Mooney I* Amended Counterclaim and Amended Affirmative Defenses; (5) *Mooney II*; and (6) fees on fees.  First, however, I examine Echo's Bylaws, which are the source of Dr. Mooney's advancement rights.

The Bylaws provide for both mandatory advancement and indemnification of the Company's officers and directors:

> **7.1 Indemnification.** Any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, including without limitation actions by or in the right of the corporation, a class of its security holders or otherwise, and whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation . . . shall be indemnified by the Corporation against expenses (including attorneys' fees), judgments, fines, excise taxes and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding to the full extent not prohibited

---

[12]    *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[13]    *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006).

under Delaware law, as amended or modified from time to time, if such person acted in good faith and in a manner believed to be in, or not opposed to, the best interest of the corporation and, with respect to any criminal action or proceeding, had no reasonable cause to believe such conduct was unlawful.[14]

**7.2 Advances.** Any person claiming indemnification within the scope of Section 7.1 shall be entitled to advances from the Corporation for payment of the expenses of defending actions against such person in the manner and to the full extent not prohibited under Delaware law, as amended or modified from time to time.[15]

Echo's Bylaws provide for mandatory advancement to the "full extent not prohibited by Delaware law."[16] The advancement provision in Article 7.2 explicitly references the indemnification provision in Section 7.1. That provision similarly makes indemnification available "to the full extent not prohibited under Delaware law." Furthermore, the language of Article 7.1 closely tracks the language of Section 145(a). I conclude, therefore, that advancement under Echo's Bylaws is available to the full extent allowable by 8 *Del. C.* § 145 and Delaware case law.

Dr. Mooney was a director and officer of Echo from 2007 until August 2013. Nevertheless, depending on which of the six categories is at issue, Echo variously denies that advancement is appropriate because: (1) Dr. Mooney is not a party and was not threatened to be made a party to any "action, suit or proceeding," as to the FINRA

---

[14]  J.S. Ex. 9 [hereinafter "Bylaws"] Art. 7.1.

[15]  *Id.* Art. 7.2.

[16]  *Id.*

7

Investigation; (2) the fees were not incurred in connection with any qualifying action (the Internal Investigation); (3) the claims are not asserted "by reason of the fact" that Dr. Mooney was an officer and director of Echo (*Mooney I*); or (4) Dr. Mooney is not "defending" an action (*Mooney II*).

## A.    The FINRA Investigation

At the Argument, Dr. Mooney represented that there are no currently pending fee reimbursement requests with respect to the FINRA Investigation and that he seeks to have the Court determine whether the FINRA Investigation is an advanceable proceeding.[17]  I conclude that Dr. Mooney is not entitled to advancement with respect to the FINRA Investigation, as it has progressed to date.

Echo contends that Dr. Mooney neither is a "party" to the FINRA Investigation nor has he been "threatened to be made a party."  The record reflects that FINRA requested information from Echo relating to suspicious trading in the Company's stock and that, in response, Echo supplied some information to FINRA.[18]  Dr. Mooney, apparently believing that Echo's submissions to FINRA reflected negatively on him, attempted to involve himself in the investigation.  Whether or not Echo replied to FINRA in a way that may have implicated Dr. Mooney in some form of misconduct, however, there is no evidence in the record that FINRA ever made Dr. Mooney a party to the investigation, threatened to make him a party or, indeed, required him to do anything.

---

[17]    Arg. Tr. 54.

[18]    JX 2.

Dr. Mooney's conclusory allegation that he "is an object of the investigation to at least some degree" is insufficient to show that Dr. Mooney is a party or has been threatened to be made a party to the FINRA Investigation.[19]  Perhaps FINRA will make or threaten to make Dr. Mooney a party to its investigation in the future.  It has not done so to date, however.  Thus, Dr. Mooney has no right to advancement for that investigation.

## B.     The Internal Investigation

Echo advanced some of Dr. Mooney's fees relating to the Internal Investigation.[20]  The outstanding fees remaining are from the Console Law Offices for services performed between October 9 and December 19, 2013.  Those invoices amount to $11,418.[21]  Dr. Mooney alleges that these fees were incurred "in connection with attempting to resolve the dispute arising out of the investigation."[22]

Dr. Mooney was terminated on September 27, 2013, after the Internal Investigation concluded.  Echo filed the Preliminary Objections on March 24, 2014.  These contested fees were incurred after the Internal Investigation but before Echo responded to the complaint in *Mooney I*.  In support of his advancement claim, Dr. Mooney argues that the fees were incurred in "defense of the accusations and termination

---

[19]     Pl.'s Pre-Trial Br. 29.

[20]     JX 48; JX 59.  These fees amounted to $13,951.69.

[21]     JX 48.

[22]     Pl.'s Pre-Trial Br. 28-29.

9

allegedly for cause."[23]  The parties have not cited, and I am not aware of, any case standing for the proposition that the retention of counsel to perform work after a termination, perhaps in anticipation of filing suit against a former employer, would constitute an officer or director "defending" himself within the meaning of 8 *Del. C.* § 145(e).  The term "defending" requires more than an impression by a director that he has been wronged and wishes to strike back.[24]  There was no qualifying action, suit, or proceeding to which Dr. Mooney was or could have been made a party by reason of the fact that he was a director or officer and in connection with which he might have incurred the fees of the Console Law Offices between October and December 2013.  I conclude, therefore, that these fees are not advanceable.

## C.    *Mooney I*

When a corporation provides for broad, mandatory advancement—as Echo does in its bylaws—an individual's entitlement to advancement often depends on whether the expenses in question were incurred in "defending"[25] against an action, suit or proceeding brought "by reason of the fact that such person is or was a director or officer of the

---

[23]    Arg. Tr. 62.

[24]    *See Baker v. Impact Hldg., Inc.*, 2010 WL 2979050, at *4 (Del. Ch. July 30, 2010) ("Baker preemptively filed these affirmative actions to offensively counter the perceived negative effects of the Investigation. That tactic, while fully within Baker's rights, does not entitle him to advancement of attorneys' fees he incurred in those Related Actions.").

[25]    Bylaws Art. 7.2.

Corporation."[26] In some situations, a corporation will sue a former director or officer and the former director or officer will assert counterclaims against the corporation. Under certain fact patterns, our law has found the fees incurred in connection with such counterclaims to be advanceable.[27] This area of advancement law has been the subject of some dispute recently.[28] Here, however, Dr. Mooney filed suit first, and Echo asserted counterclaims against him. This scenario more readily satisfies the "defending" requirement.[29] The question before me in this case is whether the counterclaims in *Mooney I* were asserted by Echo against Dr. Mooney "by reason of the fact" that he was a former director and officer of Echo. In that regard, I note that "courts often can determine whether the 'by the reason of the fact' requirement has been satisfied solely by

---

[26] *Id.* Art. 7.1.

[27] *See, e.g.*, *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992) (concluding that counterclaims asserted by a former officer against the former employer were "necessarily part of the same dispute and were advanced to defeat, or offset, [the corporation's] Section 16(b) claim," and thus asserted in "defense" of the affirmative claims, and ordering advancement); *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at \*7 (Del. Ch. May 29, 2014) (holding "the governing standard to be the one established in *Roven,* under which compulsory counterclaims 'advanced to defeat, *or offset*' affirmative claims may be subject to advancement") (quoting *Roven*, 603 A.2d at 824 (emphasis added)).

[28] *See Pontone v. Milso Indus. Corp.*, 2014 WL 4967228 (Del. Ch. Oct. 6, 2014) (certifying interlocutory appeal on an issue concerning the counterclaim standard articulated in *Roven* and subsequent cases from the Court of Chancery interpreting that standard). The *Pontone* case ultimately settled before merits review by the Delaware Supreme Court.

[29] *E.g.*, *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 401 (Del. Ch. 2009) (awarding advancement in a situation where former officer sued corporation and corporation asserted counterclaims, noting that, "When a corporation plays offense, the covered person it claims against is 'defending'").

11

examining the pleadings in the underlying litigation."[30]  I therefore turn next to the pleadings in *Mooney I*.

### 1.     The Original Counterclaims

Echo apparently did not dispute that Dr. Mooney was entitled to advancement for some of its Original Counterclaims, and it, in fact, paid most of Dr. Mooney's related requests for advancement.  Only a relatively small portion of those fees—roughly $34,000—is contested here.  Echo contends that Dr. Mooney has not sufficiently tied those fees to his defense of the Original Counterclaims to satisfy his burden of showing that the fees are advanceable.

Based on the current record, I cannot determine whether these fees are advanceable.  With the following comments as guidance, I would hope the parties can confer and reach agreement on this issue.  Otherwise, any remaining disputes over all or part of the $34,000 requested shall be dealt with pursuant to the dispute resolution mechanism detailed in Section V *infra* and the accompanying Order.

I begin with several general observations.  "A party making a fee application bears the burden of justifying the amounts sought."[31]  Fee requests must be reasonable.  At the same time, our law is clear that the Court will not engage in a line-item review of invoices and second-guess with hindsight the appropriateness of an attorney's

---

[30]     *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014).

[31]     *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 995 (Del. Ch. 2012).

judgment.[32]  "Determining reasonableness does not require that this Court examine individually each time entry and disbursement."[33]  As then-Vice Chancellor Strine wrote:

> [T]he function of a § 145(k) advancement case is not to inject this court as a monthly monitor of the precision and integrity of advancement requests.  Unless some gross problem arises, a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding.[34]

The same principles apply to this dispute.

With respect to the specific fees at issue here, I make two more targeted comments.  First, some of these fees allegedly relate to Dr. Mooney's attempt to obtain fees on fees.  To the extent any of the $34,000 relates to fees on fees, that amount is not advanceable at this time because those requests would have been premature.  Fees on fees are paid in connection with a successful effort in this Court to demonstrate that a corporation wrongfully has withheld advancement.  Second, to the extent these disputed fees relate to Dr. Mooney's underlying claims, and not the counterclaims, those fees are not advanceable.  This would include, for example, any fees Dr. Mooney incurred before Echo asserted the Original Counterclaims.  If, however, the fee requests relate to *both* advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the

---

[32]  *Id.* at 997.

[33]  *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010).

[34]  *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003).

13

existence of the non-advanceable claims.[35]  Finally, I reiterate that any doubts should be resolved in favor of advancement.  The policy of Delaware favors advancement when it is provided for, with the Company's remedy for improperly advanced fees being recoupment at the indemnification stage.[36]

### 2.    The Amended Counterclaim and Amended Affirmative Defenses

The more substantial dispute with respect to *Mooney I* concerns the Amended Counterclaim and Amended Affirmative Defenses.  Echo deliberately amended its Original Counterclaims in an effort to moot Dr. Mooney's claims for advancement and has made no secret of its motive.[37]  Delaware law recognizes the ability of a defendant corporation to moot an advancement dispute by removing any counterclaims that would trigger an advancement right for a former director or officer.[38]  Invoking that precedent,

---

[35]  *See, e.g.*, *Danenberg*, 58 A.3d at 997-98 (noting that the nature of the advancement right counsels against granular review of each and every charge); *Paolino v. Mace Sec. Int'l*, 985 A.2d 392, 408 (Del. Ch. 2009); *see also Konstantino v. Angioscore*, C.A. No. 9681-CB (Del. Ch. Feb. 16, 2015) (TRANSCRIPT) at 10-12 (concluding that fees need not be apportioned among co-defendants if the legal work would have been done regardless of the existence of co-defendants).

[36]  *Holley*, 2014 WL 7336411, at *13-14; *Danenberg*, 58 A.3d at 998.

[37]  J.S. Ex. 41 (letter to Dr. Mooney's counsel informing him of Echo's position that the advancement claims were mooted upon the filing of the Amended Answer).

[38]  *See Danenberg v. Fitracks, Inc.*, 2012 WL 11220, at *6 (Del. Ch. Jan. 3, 2012) (recognizing concept, but concluding that it was not possible at the advancement stage to "parse finely" between advanceable and non-advanceable claims against former officer and finding inconclusive opposing counsel's representations that they were only pursuing non-advanceable claims); *Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *2 (Del. Ch. Jan. 8, 2010) (concluding that a

14

Echo has represented that it is not pursuing any official capacity claims against Dr. Mooney and will not do so.

In making this argument, Echo relies heavily on *Xu Hong Bin v. Heckmann Corp.* In the only other Delaware case addressing the same issue, *Danenberg v. Fitracks*, the Court declined to follow the *Xu Hong Bin* principle, because the Court found it unworkable in the circumstances of the *Fitracks* case. Likewise, I find the facts of *Xu Hong Bin* distinguishable from the situation here. In *Xu Hong Bin*, only claims relating to pre-merger conduct gave rise to an advancement obligation on the part of the corporation. In that context, the corporation declined to assert pre-merger claims and instead challenged only post-merger conduct. Thus, there was a bright-line, temporal standard and by not asserting any claims relating to conduct before a set date, the corporation was able to defeat a claim for advancement. Here, there is no such clear demarcation. In addition, the Amended Counterclaim, by its very language, concerns Dr. Mooney's conduct while he was CEO and Chairman of the Board. Under these circumstances, a representation from counsel that the counterclaim involves only non-advanceable subject matter is inconclusive. Instead, I must examine the Amended Counterclaim and Affirmative Defenses to determine the nature of the issues raised by those pleadings.

---

corporation could avoid advancement by representing that it "is not pursuing, and will not pursue" certain pre-merger claims).

15

As relevant here, the Amended Counterclaim alleges:

> During the course of his employment with Echo, without the express or implied approval of the Board of Directors, other officers or other proper authority, and affirmatively concealing his actions from them, Dr. Mooney intentionally and improperly caused Echo to pay or reimburse him for personal expenses unrelated to the business of Echo.[39]

Of the thirteen affirmative defenses currently interposed by Echo, only two, which I refer to as the Amended Affirmative Defenses, appear potentially relevant. They are as follows:

> Counts I, II, III and IV fail as a matter of law because of Dr. Mooney's material breach of one or more of the personal obligations of his Employment Agreement which exist, as does his claim for severance pay, solely as a matter of personal contract between him and Echo and not as a result of his legal status as an employee, officer or director of Echo.[40]

> \* \* \* \*

> Any harm alleged in the Complaint to have been suffered by Dr. Mooney or his wife is the direct result of his own breach of the personal obligations of his written Employment Agreement, which exist solely as a matter of personal contract between him and Echo and not as a result of his legal status as an employee, officer or director of Echo, and not as the result of any act or omission of any Defendant and/or actions taken by Dr. Mooney solely for his personal benefit and outside the scope of his duties as an employee, officer or director of Echo.[41]

---

[39] Am. Answer ¶ 130.

[40] *Id.* ¶ 117.

[41] *Id.* ¶ 127.

16

The other affirmative defenses, on their face, do not implicate any advancement obligations. Those defenses consist mostly of arguments that Dr. Mooney's claims fail because of, for example, the inapplicability of certain wage and hour statutes to those claims.

The language of the Amended Counterclaim and the Amended Affirmative Defenses reflect Echo's conscious effort to allege only personal capacity claims, as opposed to claims relating to Dr. Mooney's official capacity, in order to avoid triggering his advancement rights. Whether Echo has succeeded, however, depends on whether the Amended Counterclaim and Amended Affirmative Defenses implicate Dr. Mooney's corporate role as an officer or director.

The "by reason of the fact" element requires that the claims be asserted because of the director or officer's status as a director or an officer, *i.e.*, his official capacity. This Court recently stated that, "In advancement cases, the line between being sued in one's personal capacity and one's corporate capacity generally is drawn in favor of advancement with disputes as to the ultimate entitlement to retain the advanced funds being resolved later at the indemnification stage."[42] Nevertheless, "certain suits between a corporation and its directors or officers do involve solely personal, and not corporate, obligations, such that the 'by reason of the fact' requirement is not satisfied."[43] Echo

---

[42] *Holley*, 2014 WL 7336411, at *9.

[43] *Id.*

17

contends that the Amended Counterclaim and Amended Affirmative Defenses fall into this latter category.

Preliminarily, I note that Echo relies primarily on *Weaver v. ZeniMax Media Inc.*[44] and *Cochran v. Stifel Financial Corp.*[45] Those cases, authored over a decade ago, often are relied upon by defendant corporations seeking to avoid paying advancement obligations to which they previously agreed.[46] The effort, however, usually fails. Since *Weaver* and *Cochran*, Delaware courts generally have eschewed attempting to resolve disputes over whether claims relate to a potential indemnitee's personal or official capacity at the advancement stage unless the answer can be discerned swiftly, accurately, and consistent with the summary nature of an advancement proceeding. Deferring resolution of less clear-cut disputes to the indemnification stage helps avoid excessive litigation over advancement. In addition to saddling the parties with unnecessary costs, litigation-related delays over advancement threaten to undermine the summary nature of the proceedings envisioned by 8 *Del. C.* § 145, as well as the policy of providing prompt reimbursement to present and former directors and officers who have had to incur

---

[44] 2004 WL 243163 (Del. Ch. Jan. 30, 2004).

[45] 2000 WL 1847676 (Del. Ch. Dec. 13, 2000), *aff'd in relevant part*, 809 A.2d 555 (Del. 2002).

[46] *Paolino*, 985 A.2d at 404 ("[C]orporations bent on limiting their exposure to mandatory indemnification and advancement provisions sought to read *Cochran* broadly as saying that if an individual agrees to serve in a covered capacity pursuant to an employment agreement, then his duties become a personal contractual obligation . . . . This is not what *Cochran* held."). Additionally, I note that *Cochran* was an indemnification case, not an advancement case.

18

attorneys' fees and related expenses.[47] This approach is similar to the practice of postponing line-item disputes over invoices to the indemnification stage, which also fosters the underlying nature of advancement and places the credit risk on the corporation and not on the individual director or officer.[48]

With these principles in mind, I turn to the issue at hand and address first the Amended Counterclaim and then the Amended Affirmative Defenses. The "by reason of the fact" requirement is satisfied if there is "a nexus or causal connection between any of the underlying proceedings . . . and one's corporate capacity."[49] Our courts interpret that standard broadly in favor of advancement and have held that the "requisite connection is established 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'"[50]

The Amended Counterclaim alleges that, "[d]uring the course of his employment with Echo," Dr. Mooney improperly caused Echo to "pay or reimburse him for personal

---

[47]  *See Danenberg*, 58 A.3d at 1002-04 (adopting new procedure that called for mandatory payment of a certain percentage of advancement requests, notwithstanding objections, instead of incurring an additional level of review by referring disputes to a special master, with the goal of effectuating the "summary and efficient proceeding contemplated by statute"). Indeed, the multiple rounds of briefing in this case exemplify the wasteful and burdensome tactics all too common in advancement proceedings.

[48]  *Id.* at 997-98 (Del. Ch. 2012) (describing advancement as an extension of credit giving rise to no net liability on the part of the corporation) (quoting *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992)).

[49]  *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[50]  *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050-51 (Del. Ch. 2014) (quoting *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007)).

19

expenses unrelated to the business of Echo."[51] To support its argument, Echo relies on *Weaver*, which held that "[t]aking too much vacation time and submitting fraudulent travel expenses are examples of personal conduct by employees," which do not satisfy the "by reason of the fact" requirement.[52] *Weaver* relied heavily on *Cochran,* which, as noted above, was an indemnification case. More recently, in *Paolino*, this Court determined that, to succeed on a *Cochran* argument at the *advancement* stage, "the claim for which the corporation seeks to avoid advancement must *clearly* involve a specific and limited contractual obligation without any nexus or causal connection to official duties."[53] *Paolino* described *Weaver* as an example of a "limited, garden variety dispute between an employer and employee."[54] The teaching of *Paolino* is that a defendant corporation cannot avoid its advancement obligations by recasting litigation regarding an officer's corporate actions as merely a dispute about an employment agreement, at least where that agreement calls for the individual to serve as a corporate officer.

In *Weaver*, the counterclaims were directed toward separate and discrete issues. The corporation conceded it was obligated to advance the former officer's fees with respect to its breach of fiduciary duty claims relating to mismanagement of the officer's department, but disputed paying advancement on its claims relating to excessive vacation

---

[51]    Am. Answer ¶ 130.

[52]    *Weaver*, 2004 WL 243163, at *5.

[53]    *Paolino*, 985 A.2d at 407 (emphasis added).

[54]    *Id.*

20

time and improper expense reimbursements. The Court there concluded that the fees for the disputed claims could be separated into discrete categories.[55] Furthermore, it does not appear that the alleged filing of fraudulent expense reports in *Weaver* implicated any of the issues that were raised in the breach of fiduciary duty claims.

Here, by contrast, it is not clear that such distinctions can be made.[56] Although the Amended Counterclaim appears straightforward on its face—and seemingly was drafted to take advantage of the holding of *Weaver*—Echo's answers to Plaintiffs' Second Set of Interrogatories in *Mooney I* indicate that the counterclaim likely will implicate official capacity issues.[57] For example, in response to Interrogatory No. 5, Echo describes a series of fraudulent reimbursements. Some of these, such as improper reimbursements for personal meals and personal computers, arguably might be non-advanceable claims under *Weaver*, but it is unlikely that such extensive, and expensive, reimbursements could have been obtained other than by reason of the fact that Dr. Mooney was CEO. I note, in particular, the claim that "Dr. Mooney placed a friend who was not an employee on Echo's health insurance plan for a period of approximately four years and paid most

---

[55]    *Weaver*, 2004 WL 243163, at *4-5.

[56]    *See Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *7-8 (Del. Ch. June 18, 2002) (rejecting argument that only the employment agreement was breached, ordering advancement, and distinguishing *Cochran*, stating: "Critically, the *Cochran* case did not involve any claim for advancement, nor did it involve a situation in which the officer's alleged breach of his employment agreements was argued to be the identical conduct that was also averred to be a breach of fiduciary duty").

[57]    JX 58 [hereinafter "Echo's Interrogatory Responses"].

21

of the premiums for such health insurance using Echo's funds."[58]  I consider it reasonable to infer that such a feat, proper or not, could not have been accomplished without the use of Dr. Mooney's corporate powers.

Equally significant, Echo alleges that Dr. Mooney effected his improper reimbursement scheme through a campaign of concealment that undoubtedly involved the exercise of corporate powers.[59]  For example, Echo avers that "Dr. Mooney frequently threatened Echo employees, particularly employees at the Vice President level and above, with termination if they did not do what he wanted them to do."[60]  The power to terminate other officers implicates Dr. Mooney's official capacity as CEO. Accordingly, despite Echo's effort to assert only personal capacity claims, I conclude that the Amended Counterclaim alleges official capacity claims or, at least that it would be unproductive and inappropriate in this advancement proceeding to attempt to differentiate between such "personal" and "official" claims.[61]  The Company's remedy for any improperly advanced fees is to seek recoupment in future indemnification proceedings.

---

[58]     *Id.* No. 5, at vi.

[59]     *Id.* No. 6.

[60]     *Id.* at v(f).

[61]     *See Reddy*, 2002 WL 1358761, at *6 ("But, the negligence, gross negligence, common law fraud, and contract claims brought against [the former officer] all could be seen as fiduciary allegations, involving as they do the charge that a senior managerial employee failed to live up to his duties of loyalty and care to the corporation.").

With respect to the two Amended Affirmative Defenses identified above, I know of no case squarely holding that affirmative defenses can trigger a corporation's advancement obligations. I am convinced, however, that the policies underlying advancement justify the payment of fees when an officer defends against affirmative defenses that implicate his performance as a corporate official, much in the same way the assertion of counterclaims by a corporation can require advancement. A recent report by Master LeGrow addressed this issue, albeit in the limited liability company context. There, she observed that:

> Indemnification and the subsidiary concept of advancement are intended to encourage persons to serve in a company, "secure in the knowledge that expenses incurred by them in upholding their honesty and integrity will be borne by the corporation they serve." In resisting the affirmative defenses that accuse him of egregious misconduct when serving as [the company's] CEO, [the plaintiff] unquestionably seeks to uphold his reputation. Although [the plaintiff] may not face monetary liability if [the company] prevails on these affirmative defenses, a judgment that he breached his fiduciary duties will have substantial implications for [the plaintiff] and his future employment prospects.[62]

The gist of the Amended Affirmative Defenses is that relief for any harm allegedly suffered by Dr. Mooney is barred by his own breach of his Employment Agreement. The interrogatory responses, however, flesh out the import of these affirmative defenses. They state that:

---

[62] *Fillip v. Centerstone Linen Servs., LLC*, 2013 WL 6671663, at *12 (Del. Ch. Dec. 11, 2013) (LeGrow, M.) (quoting *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del. 1983)), *aff'd and remanded*, 2014 WL 793123 (Del. Ch. Feb. 27, 2014), *initial report confirmed and expanded on remand to reflect new developments*, 2014 WL 1821299 (Del. Ch. May 1, 2014) (LeGrow, M.).

> Dr. Mooney's violation of company policies approved by the Board governing business entertainment (expenses should be modest), contracts and agreements (all contracts and agreements must be in writing and approved as to form by the General Counsel), confidential information (maintained as confidential and not disclosed without an appropriate (meaning written) non-disclosure agreement) and workplace harassment constituted breaches of the employment agreement.[63]

Several of these categories involve a nexus between the alleged wrongdoing and Dr. Mooney's official capacity, like the improper reimbursement issues I previously discussed. In addition, it is unlikely that Dr. Mooney would have been able to enter into improper contracts of the kind alleged[64] unless he was a high-ranking corporate officer with the power to execute such contracts. Similarly, Dr. Mooney's access to Echo's confidential information came from his position as CEO and Chairman.[65] Litigating these Amended Affirmative Defenses will require Dr. Mooney to defend his conduct as an officer and director of the Company. If they had been asserted as affirmative claims by the Company, these defenses would be tantamount to claims for declaratory

---

[63] Echo's Interrog. Resp. No. 12.

[64] *E.g.*, *id.* No. 13, at vii (alleging that Dr. Mooney hired, without permission, two individuals at salaries of $200,000 each).

[65] *Id.* No. 9 (describing various alleged instances of disclosing "confidential, nonpublic information"); *see also Holley*, 2014 WL 7336411, at *8.

24

judgments of fiduciary duty breaches and, to some extent, breaches of contract as well. Although differently styled, the underlying substance of the allegations is quite similar.[66]

For all of these reasons, I conclude that the Amended Counterclaim and the Amended Affirmative Defenses quoted above are asserted by reason of the fact that Dr. Mooney was an officer and director of Echo. I therefore hold that the Company must advance Dr. Mooney's reasonable fees and expenses incurred in defending against the Amended Counterclaim and those two Amended Affirmative Defenses. To the extent Plaintiff seeks advancement as to any of the remaining eleven affirmative defenses, that portion of his request is denied.

### D.   *Mooney II*

*Mooney II*, on the other hand, is a different story. Dr. Mooney contends that the term "defending" encompasses actions taken to vindicate one's honesty and integrity.[67] The outer boundaries of such an interpretation, if they exist, would be difficult to define. Although the language quoted from the Master's report in *Centerstone Linen* arguably might support Dr. Mooney's sweeping interpretation of the term "defending," advancement is not quite so broad in the corporate context as it potentially could be in the

---

[66]   *Reddy*, 2002 WL 1358761, at *6 ("Most critically, all of the misconduct alleged by [the company] involves actions [the former officer] took on the job in the course of performing his day-to-day managerial duties.").

[67]   Pl.'s Pre-Trial Br. 33-34.

LLC context.[68] In the affirmative defense context, Dr. Mooney still is "defending" within the same action against allegations asserted against him by reason of the fact he was a director and officer. *Mooney II*, however, involves a second lawsuit, brought by Dr. Mooney, against his former employer. In that regard, I note that Dr. Mooney does not seriously contend that he was entitled to advancement for the underlying claims he asserted in *Mooney I*, even though, under his expansive understanding of the term, those claims could be characterized as "defensive" because they contest whether Dr. Mooney was fired for cause. Similarly, I conclude that Dr. Mooney is not entitled to advancement for the claims he has asserted in *Mooney II*.

The general rule is that offensive litigation is not advanceable.[69] Delaware case law only considers such litigation to be "defensive" in the limited context of compulsory counterclaims asserted to defeat or offset affirmative claims by the corporation.[70] If the term defending were construed more broadly, advancement would have the potential to become an unfettered license enabling disgruntled former officers and directors to litigate at the Company's expense. Vindicating one's reputation may serve important personal objectives, but that does not mean that filing an offensive lawsuit qualifies as

---

[68] *See Centerstone Linen Servs.*, 2014 WL 1821299, at *6 (noting that advancement is less restrictive under the Delaware LLC Act than under 8 *Del. C.* § 145).

[69] *E.g.*, *Baker v. Impact Hldg., Inc.*, 2010 WL 2979050, at *4 (Del. Ch. July 30, 2010) ("Baker preemptively filed these affirmative actions to offensively counter the perceived negative effects of the Investigation. That tactic, while fully within Baker's rights, does not entitle him to advancement of attorneys' fees he incurred in those Related Actions.").

[70] *See supra* notes 27-29.

26

"defending," within the meaning of 8 *Del. C.* § 145, against claims asserted by reason of the fact that one was an officer or director. Indeed, the only affirmative litigation that Delaware case law sanctions as "defending" and, therefore, advanceable has occurred in the context of certain counterclaims asserted by an officer or director in response to claims against that person by the company. In allowing advancement for those counterclaims, the courts have recognized that "defending" in the litigation setting sometimes involves affirmative maneuvers.[71] Furthermore, as noted *supra*, not all counterclaims are advanceable. Because *Mooney II* involves a separate lawsuit, it is neither compulsory nor would it defeat or offset any affirmative claim of Echo. In that regard, the only relevant affirmative claims asserted by the Company appear to be the Original Counterclaims, which Echo withdrew before *Mooney II* was filed.[72]

Granting advancement for *Mooney II* would require a finding that, in that action, Dr. Mooney is "defending" against the counterclaims Echo formerly asserted against him, but later withdrew in *Mooney I*. Our advancement law simply does not stretch that far. I hold, therefore, that Echo is not required to advance the fees and expenses incurred in *Mooney II*.

---

[71] *Paolino*, 985 A.2d at 401.

[72] Notably, regardless of the precise standard under *Roven* for the advanceability of counterclaims, *Mooney II* fails to satisfy any of the three possible requirements, because it: (1) is not compulsory; (2) does not defeat the Original Counterclaims; and (3) does not offset the Original Counterclaims.

27

## E.      Fees on Fees

A portion of the early dispute between the parties that preceded this lawsuit concerned fees on fees. This Court awards fees on fees when a plaintiff successfully shows an entitlement to advancement wrongfully withheld by the defendant corporation. Moreover, "[p]ursuant to [8 *Del. C.* § 145] . . . this Court 'will only award that amount of fees that is reasonable in relation to the results obtained.'"[73]

As for this action, Dr. Mooney successfully has argued for advancement in *Mooney I* as to the Amended Counterclaim and the two Amended Affirmative Defenses. Dr. Mooney failed to show, however, that advancement was improperly withheld for fees relating to the FINRA Investigation, the Internal Investigation, or *Mooney II*.[74] The status of the approximately $34,000 in disputed fees related to the Original Counterclaims remains unresolved. Overall, of the four categories of disputed claims I have addressed in this Memorandum Opinion, Dr. Mooney prevailed in only one such category. Given the relative importance of that category, however, as compared to the Internal Investigation, the FINRA Investigation, and *Mooney II*, I award him 40% of his fees on fees reasonably incurred in the prosecution of this case.

---

[73]    *Holley*, 2014 WL 7336411, at *15 (quoting *Pontone*, 100 A.3d at 1176) (internal quotations omitted).

[74]    Dr. Mooney also asserted a few arguments in the earlier stages of the parties' advancement disputes that are contrary to law and, therefore, either were abandoned or rejected. These include his initial refusal to provide the undertaking required by 8 *Del. C.* § 145(e) and his efforts to obtain an upfront payment of $100,000 akin to a retainer.

28

I arrived at this amount through a comparison of the invoices in the record and their respective amounts, as well as by considering the likely future importance of *Mooney I* and *Mooney II*.[75] The Internal Investigation includes a relatively small amount of fees, a fact likely also true for the FINRA Investigation, although an exact amount could not be discerned for that proceeding. Both *Mooney I* and *Mooney II* remain ongoing, but the expenditures incurred at or about the time of trial in *Mooney I*, which was commenced on February 4, 2014, significantly exceeded the expenditures incurred in *Mooney II*, which began on June 18, 2014. After considering all of the circumstances, I conclude that Dr. Mooney succeeded in convincing the Court to award somewhat less than half of what he originally sought to have advanced by Echo.

## V.   MOVING FORWARD

At the Argument, reference was made to the *Fitracks* procedure.[76] Apparently, the parties came close to implementing such a procedure, but failed to reach agreement on it. As an alternative to the *Fitracks* approach, the parties also discussed the appointment of a special master. At this point, I believe that using a special master would increase the costs to both parties and lead to unnecessary delay. Accordingly, I adopt a *Fitracks*-like procedure for this case. An Order accompanying this Memorandum Opinion details the method to be used for resolving future advancement disputes.

---

[75]   *E.g.*, JX 49, JX 56.

[76]   *Danenberg*, 58 A.3d at 1002-04.

## VI. CONCLUSION

For the foregoing reasons, I conclude that Dr. Mooney is entitled to advancement for fees and expenses reasonably incurred in defending against the Amended Counterclaim and the two Amended Affirmative Defenses that I identified. Dr. Mooney also is entitled to 40% of the reasonable fees and expenses he incurred in bringing this action. The parties shall resolve all remaining advancement disputes, including the disagreement over the Original Counterclaims, in accordance with the guidance provided in this Memorandum Opinion and the procedure set forth in the accompanying Order. In all other respects, Dr. Mooney's request for advancement is denied.

**IT IS SO ORDERED.**